UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ISAEL URENA SEPULVEDA,

Plaintiff,

v.

SERGIO ALBARRAN, et al.,

Defendants.

Case No. 26-cv-04373-JST

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

Re: ECF No. 2

Before the Court is Petitioner Isael Urena Sepulveda's motion for a temporary restraining order. ECF No. 5. Petitioner filed a Petition for a Writ of Habeas Corpus, and a motion for temporary restraining order against Respondents Field Office Director for U.S. Immigration and Customs Enforcement ("USCIS") Sergio Albarran, Acting Director of Immigration and Customs Enforcement ("ICE") Todd M. Lyons, Secretary of the Department of Homeland Security ("DHS") Markwayne Mullins, and Acting United States Attorney General Todd Blanche. ECF No. 1. Petitioner seeks (1) his immediate release from Respondents' custody pending these proceedings, and (2) to enjoin Respondents from transferring him out of this District or deporting him during the pendency of the underlying proceedings. The TRO as modified below is granted.

I.      BACKGROUND

According to the petition and attached declarations, Petitioner is a Mexican citizen who entered the United States around the year 2000 and has lived here ever since. Petitioner was arrested by DHS in 2016 and issued a notice to appear, placing him in removal proceedings under INA § 240 and charging him under INA § 212(a)(6)(A)(i). ECF No. 2-2 at 2; ECF No. 2-1 at 23–25. Petitioner was released on bond the same year. *Id*. at 3; ECF No. 2-1 at 40. Petitioner has a pending EOIR-42B application for the cancellation of removal and adjustment of status for certain

nonpermanent residents, which USCIS received on October 24, 2017. ECF No. 2-2 at 2; ECF No. 2-1 at 36. Petitioner is scheduled for a hearing in the San Francisco Immigration Court on March 26, 2027. ECF No. 2-1 at 2. Petitioner lives in Napa, California with his wife and four U.S. Citizen children. *Id*. Petitioner was detained on May 12, 2026 by ICE on his way to work. As of 11:24 am today, he was detained at the ICE Detention Facility at 630 Sansome Street in San Francisco. *Id*. at 3.

Petitioner alleges that he and his family—his wife who is a lawful permanent resident and four children, will experience irreparable harm due to his detention. ECF No. 2-2 at 8; ECF No. 2-1 at 18–20. Petitioner also alleges that the risk of transfer to a different facility would cause irreparable harm as it will impair his access to counsel, family support, and effective judicial review. ECF No. 2-2 at 8.

## II.    LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). "[A] TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's

United States District Court
Northern District of California

favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

### III.    DISCUSSION

As a preliminary matter, while Petitioner notes that they do not seek ex parte relief, the requirements for issuing a temporary restraining order before the adverse party can be heard in opposition as set out in Federal Rule of Civil Procedure 65(b)(1) are met in this case. Petitioner's counsel has set out specific facts showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition. Respondents were given notice of Petitioner's submission of his request for TRO and Respondents have not filed any response yet, even though they have entered an appearance in this case. ECF No. 2 at 4.

Petitioner has shown at least that there are "serious questions going to the merits" and that "the balance of hardships tips sharply" in his favor. *Weber*, 767 F.3d at 942. Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Courts have previously found that individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond. *See Ortiz Vargas v. Jennings*, No. 20-cv5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does Ortega have a liberty interest in remaining out of custody on bond."); *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar.

United States District Court
Northern District of California

3

1, 2021).

The three factors relevant to the due process inquiry set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976)—"the private interest that will be affected by the official action," "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *id*. at 335—require that Petitioner be immediately released from custody, and that he be given notice and a pre-detention hearing before a neutral decisionmaker prior to being taken back into custody. Petitioner has a substantial private interest in remaining out of custody, which would allow him to live at home, work, and continue to provide for his family. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). There is also a risk of erroneous deprivation that the additional procedural safeguard of a pre-detention hearing would help protect against. Like other courts in this district, here, the government's interest in re-detaining Petitioner without a hearing is "low," particularly in light of the fact that Petitioner was released on bond. See *Jorge M.F.*, 2021 WL 783561, at *3.

Petitioner is also likely to suffer immediate and irreparable harm in the absence of preliminary relief. The Ninth Circuit has recognized "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Those risks are present here. As previously described, Petitioner has four dependent children and a wife who would be harmed by his detention. ECF No. 2-1 at 18–20. Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Finally, the balance of the equities and the public interest, which merge in light of the fact that the government is the opposing party, tip sharply in Petitioner's favor. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F.*, 2021 WL 783561, at *3 (cleaned up) (quoting *Ortiz Vargas*, 2020 WL 5074312, at *4, and

United States District Court
Northern District of California

then quoting *Hernandez*, 872 F.3d at 996); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Without the requested injunctive relief, Petitioner faces the danger of deprivation of his liberty. Yet the comparative harm potentially imposed on Respondents is minimal—a mere short delay in detaining Petitioner, should the government ultimately show that detention is intended and warranted. Moreover, a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). The balance of hardships thus tips decidedly in Petitioner's favor.

A TRO immediately releasing Petitioner is appropriate to return him to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Petitioner's detention. *See Kuzmenko v. Phillips*, No. 25cv00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a TRO requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo). Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO Motion is granted as detailed below.

**CONCLUSION**

For the foregoing reasons, Petitioner's Motion for Temporary Restraining Order is granted to preserve the status quo pending further briefing and a hearing on this matter. Respondents are ordered to release Petitioner immediately from Respondents' custody and are enjoined and restrained from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker, and from removing Petitioner from the United States. This Order shall remain in effect until May 26, 2026.[1]

---

[1] Petitioner also asks the Court to order that he remain within the Northern District of California in order to preserve this Court's jurisdiction. As it is established that "when the Government moves a habeas petitioner after [he] properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has

Respondents are ordered to show cause at a hearing on May 21, 2026, at 9:30 a.m. why a preliminary injunction should not issue. Respondents shall file a response to Petitioner's motion by no later than May 15, 2026. Any reply shall be filed by May 19, 2026. The hearing will be conducted by Zoom Webinar.

**IT IS SO ORDERED.**

Dated: May 12, 2026, at 4:15 p.m.



RS

JON S. TIGAR
United States District Judge

---

legal authority to effectuate the prisoner's release," the Court declines to order this relief. *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).